# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HILARIO NIETO, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | Case No. CIV-09-1002-D |
| ) | |
| H. A. LEDEZMA, WARDEN, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner appearing *pro se*, has filed a petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2241. Petitioner alleges a violation of his federal due process rights in connection with a prison disciplinary conviction on a misconduct offense. The matter has been referred for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the petition, *see* Doc. #12, to which Petitioner has replied, *see* Doc. #15. This matter is now at issue. For the reasons set forth below, it is recommended that the petition be denied.

## I.     Background

Petitioner is currently incarcerated at the Federal Correctional Institution in El Reno, Oklahoma ("FCI-El Reno"). However, the misconduct offense which forms the basis of his claims occurred during his incarceration at the Federal Correctional Complex in Forrest City, Arkansas ("FCC Forest City").

On June 3, 2008, the staff at FCC Forest City met with a group of inmates, including Petitioner, to discuss various inmate complaints ranging from medical care, library

accommodations, visitation and food services. A video surveillance of the recreation yard later that same day showed a group of inmates holding a meeting. Petitioner was present at that meeting and according to an investigation by prison officials, he was involved in plans to initiate a group demonstration the following day, June 4, 2008.

On June 10, 2008, prison officials at FCC Forest City completed an investigation into the planned inmate demonstration. On June 12, 2008, a prison official, SIA E. Thompson, completed an incident report based on this investigation and charged Petitioner with the offense of encouraging a group demonstration. *See* Memorandum of Law In Support of Petition (Petitioner's Memorandum) [Doc. #3], Exhibit A, Incident Report ("Incident Report").[1]

According to the Incident Report, Petitioner "played a role planning and encouraging other inmates to participate in a group demonstration which was planned for June 4, 2008, at approximately 11:00 A.M., mainly a Food Strike during the noon meal." *See id*. The Incident Report further provides that Petitioner gave a statement during an interview with SIS staff on June 5, 2008, and "denied being a strong supporter or behind organizing the planned Food Strike" but admitted to telling other inmates during the meeting in the recreation yard on June 3, 2008, that: "What ever [sic] you all agree to do make sure you stick with it and follow through." *Id*.

---

[1] According to the Incident Report, "[s]taff conducted Mass Interviews of the inmate population between June 4th and June 6th of 2008, there was 214 inmates who admitted to having knowledge of [a] planned Food Strike on June 4, 2008." *See id*. The investigation apparently thwarted efforts to proceed with the food strike as no food strike in fact occurred on June 4, 2008.

2

Petitioner received a copy of the Incident Report on June 12, 2008. *See id*. A disciplinary hearing was held on July 10, 2008. At that hearing, Petitioner was represented by a staff representative, D. McDaniel. Petitioner was allowed to present evidence on his behalf. As part of the evidence submitted, he made a statement admitting that on June 3, 2008, while in the recreation yard, he told other inmates "that whatever they agreed on, they needed to make sure they stuck to it and followed through." Petitioner denied, however, that he was involved in any way in encouraging a strike. Petitioner also called a witness on his behalf, inmate Salinas. Salinas did not appear in person but his written statement was submitted to the hearing officer. Salinas alleged in his statement that Petitioner did not say anything during the inmate meeting in the recreation yard. *See* Petitioner's Memorandum, Exhibit B, Discipline Hearing Officer Report. *See also* Response, Attachment 2 (same). Petitioner also called as a witness on his behalf Lt. Gomez, a prison official at FCC Forest City. According to Petitioner, Lt. Gomez testified that the incident had been "blown out of proportion" and that the reason for Petitioner's involvement was that prison officials, Lt. Gomez and Captain Maune, had required Petitioner's attendance at the meeting with prison officials earlier in the day on June 3, 2008. *See* Petitioner's Memorandum, Exhibit D, Regional Administrative Remedy Appeal at 2 (petitioner's statement summarizing Lt. Gomez's testimony).

## II. Petitioner's Grounds for Federal Habeas Relief

Petitioner contends his due process rights were violated in the course of the disciplinary proceedings on the following grounds: (1) he was not provided a copy of the "Mass Incident Report," an investigation report relied upon by the hearing officer for Petitioner's admission that he told the inmates to "stick to it and follow through"; (2) Petitioner's request to review the video of the recreation yard surveillance on the incident date was denied; and (3) although Petitioner was allowed to call Lt. Gomez as a witness during his hearing, the hearing officer did not include Lt. Gomez's statements in the disciplinary hearing report thus failing to comply with rules and regulations of the Federal Bureau of Prisons (BOP). As relief, Petitioner requests that his misconduct conviction be expunged and that the 27 days of good time credits revoked as punishment for the misconduct offense be reinstated.

## III. Analysis

"It is well-settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Howard v. United States Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (*quoting Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996)). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). An inmate receives due process in conjunction with an institutional disciplinary proceeding if he is given: (1) advance written notice of the

4

disciplinary charge; (2) an opportunity, consistent with institutional safety and correctional goals, to present witnesses and documentary evidence; and (3) a written statement of the evidence relied on and the reasons for any disciplinary action. *Superintendent, Massachusetts Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). If those protections are provided and there is "some evidence" to support the resolution of the disciplinary charge, then the Due Process Clause's procedural requirements have been satisfied. *Id.*; *see also Mitchell*, 80 F.3d at 1445 (noting that the scope of a court's due process review of a prison disciplinary proceeding is limited to determining whether *Wolff's* requirements are met and there is some evidence to support the decision).

Petitioner does not argue that he received insufficient notice of the charge against him or that he did not receive a written statement of the evidence relied on and the reasons for the disciplinary conviction. Nor does Petitioner challenge the evidence supporting the conviction. Petitioner's claims instead focus essentially on the alleged denial of the opportunity to present witnesses and documentary evidence. *See Godlock v. Fatkin*, 84 Fed. Appx. 24, 27 (10th Cir. Dec. 16, 2003) (unpublished op.) (petitioner's claim that he was denied opportunity to view videotape prior to prison disciplinary hearing and denied a copy of a medical report prior to such hearing did not raise claim challenging the sufficiency of the evidence but was claim alleging denial of procedural due process).

To provide due process, prison officials must give an inmate facing disciplinary proceedings the opportunity to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or

5

correctional goals." *Wolff*, 418 U.S. at 566. The scope of a prisoner's right to call and confront witnesses and present documentary evidence is committed to the sound discretion of prison officials who must exercise their discretion on an individualized basis. *Ramer v. Kerby*, 936 F.2d 1102, 1104 (10th Cir. 1991).

### A. Failure to Provide Copy of Investigation Report

Petitioner first claims he was not provided a copy of a "Mass Incident Report" which contained an alleged admission made by Petitioner made on June 5, 2008, to an investigating officer.[2] This admission was relied upon by the hearing officer to support the determination of guilt. *See* Response, Attachment 2, Discipline Hearing Officer Report at 3 ("In an interview with SIS Staff, you denied being a strong supporter of the organizing or being behind the planned food strike. You did admit to telling 'them' at the meeting Tuesday night (on the recreation yard), that whatever they agreed to do to make sure they stuck with it and follow through."). Petitioner denies making the admission. The hearing officer expressly acknowledged that Petitioner denied making the admission as set forth in the report. *See id*. ("I considered your statement to the investigating lieutenant wherein you stated the report was not true.").

---

[2] The report to which Petitioner refers is the report summarizing the internal investigation by prison officials of the planned group demonstration. To avoid confusion with the Incident Report served on Petitioner to notify him of the misconduct charges, the report of the internal investigation is referenced as the Investigation Report.

The record contains no compelling evidence that Petitioner at any time, requested a copy of the Investigation Report for purposes of the disciplinary hearing.[3] Respondent does not, however, dispute that Petitioner made such a request but maintains that Petitioner was provided with the Incident Report which summarized the findings of the investigation and this satisfies due process requirements. *See* Response at 9-10.[4] Assuming Petitioner's contention is true and that despite a request for the Investigation Report his request was denied, he nonetheless has failed to establish a due process violation.

The hearing officer based his finding of guilt, in part, on Petitioner's statement *during the hearing* that he told inmates present at the meeting in the recreation yard that "whatever they agreed on, they needed to make sure they stuck to it and followed through." *See* Response, Attachment 2, Discipline Hearing Officer Report at 3 ("During the DO hearing you stated in summary . . . [that] you denied any involvement in encouraging a strike. You did admit to telling those present at the meeting on the recreation yard, that whatever they agreed on, they needed to make sure they stuck to it and followed through.").

In *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006), the Tenth Circuit Court of Appeals addressed a prisoner's due process right to the opportunity to call witnesses and

---

[3]In Petitioner's administrative appeal of the disciplinary conviction, he states "I asked my staff rep to present the mass interview report as evidence and the DHO denied this request." *See* Petitioner's Memorandum, Exhibit D, Regional Administrative Remedy Appeal at 1. Other than this statement in Petitioner's appeal, there is no documented request for the report.

[4]Respondent also makes a conclusory statement that "prison administrators are not required to produce evidence when institutional security or correctional goals are jeopardized." *See* Response at 10. But Respondent provides no evidence that prison officials actually denied a request from Petitioner for the Investigation Report based on such concerns.

7

present evidence in his defense and determined that an alleged denial of this right is subject to harmless error review.[5] A prisoner cannot maintain a due process claim for failure to permit witness testimony unless he shows that the testimony "would have affected the outcome of his case." *Id.* at 805 (citation omitted). The Court determined in *Grossman*, that the witness testimony the prisoner was prevented from presenting would not have aided the prisoner's defense and therefore, any error in refusing to allow this witness to testify was harmless. *Id.*

Here, Petitioner fails to demonstrate how the Investigation Report would have aided his defense. He made the same admission to the hearing officer during the course of the hearing as the challenged admission he claims was falsely made in the Investigation Report. And, the hearing officer expressly acknowledged that Petitioner was challenging the Investigation Report as false.

Petitioner claims the admission was taken out of context and that his statement was not intended to encourage a group demonstration but to continue discussions with prison officials about the inmates' prison conditions concerns.[6] The hearing officer expressly considered this argument as well in reaching his decision. The hearing officer stated:

---

[5]The Tenth Circuit was expressly addressing the prisoner's challenge to the right to present witnesses. The same rationale, however, extends to the right to present documentary evidence.

[6]In his appeal of the disciplinary conviction, Petitioner contends that what he stated during the meeting in the recreation yard related to the meeting earlier that day with Captain Maune and Lt. Gomez. He contends that he said the designated inmate representatives from that meeting "should stick to the issues already broached with Capt. Maune and to follow through on only these issues and not get sidetracked on personal issues." He contends prison officials misconstrued this statement to falsely charge him with encouraging a group demonstration.

8

> Though you denied your intent was not to encourage a group disruption, I find it relevant you did admit to saying that whatever they agreed on, they needed to make sure they stuck to it and followed through. It is reasonable to believe in a prison setting, when statements of this nature are made, especially in the presence of other inmates, it is for the sole purpose of uniting and focusing the group on one goal. . . .

*See* Response, Attachment 2, Discipline Hearing Officer Report at 3.

Under these circumstances, Petitioner has failed to demonstrate that presenting the Investigation Report would have affected the outcome of his case. Any error arising out of the alleged denial of Petitioner's request for the Investigation Report, therefore, is harmless.

**B.      Failure to Provide Copy of Surveillance Video**

Petitioner next claims he was denied the opportunity to utilize the surveillance video of the recreation yard on the incident date to establish his innocence. Assuming Petitioner made a request to view and present video evidence and that request was denied, any error related to such denial is harmless.[7]

According to Petitioner both he and his staff representative were denied a request to view and present the video evidence. Petitioner claims the surveillance video would have demonstrated that he was silent during the meeting of inmates in the recreation yard and that not one time did he "discuss, open his mouth for a long period of time as described in the

---

[7]Again, the record contains no documented request by Petitioner for the video. In his appeal of the disciplinary conviction, Petitioner states "I asked, requested the DHO to review the video so that she (Ms. Ward) could see I never opened my mouth at the rec yard meeting. My request was rebuffed and denied . . . ." *See* Petitioner's Memorandum, Exhibit D, Regional Administrative Remedy Appeal at 2.

incident report." *See* Petitioner's Memorandum at 6. He states his silence was corroborated by the witness statement of Inmate Salinas.[8]

The hearing officer, however, did not base his determination of guilt on any indication in the video as to the length of time Petitioner appeared to be talking, or not, during the inmate gathering in the recreation yard.[9] Instead, the hearing officer interpreted Petitioner's statement to the other inmates at that meeting as a statement intended to encourage a group disruption. As discussed above, Petitioner does not deny making the statement, he only denies the interpretation given to that statement by the hearing officer. As such, Petitioner fails to establish how presentation of the video would have aided his defense.

### C. Lt. Gomez's Witness Statement

As his third claim of error, Petitioner contends the hearing officer failed to comply with BOP's rules and regulations because he did not address in the Discipline Hearing Officer Report the statement of Lt. Gomez offered on behalf of Petitioner during the hearing. Petitioner states that Lt. Gomez testified before the hearing officer that prior to the meeting on the recreation yard, Petitioner had been required to attend a meeting by both Lt. Gomez and Captain Maune regarding the inmates' concerns over various issues regarding the conditions of their confinement. Petitioner alleges at least forty inmates attended this meeting. Petitioner claims that the subsequent meeting of inmates in the recreation yard was

---

[8]Petitioner does not deny his presence at the meeting of inmates in the recreation yard.

[9]He did find not credible the testimony of Inmate Salinas that Petitioner said nothing in the recreation yard because Petitioner admitted to making the comment to the inmates gathered there. *See* Response, Attachment 2, Discipline Hearing Officer Report at 3.

in furtherance of this meeting with prison officials and not to encourage a group demonstration.[10]

Petitioner's due process challenge is premised on the hearing officer's failure to reference Lt. Gomez's testimony in the hearing officer report. However, to establish a due process violation, Petitioner must demonstrate that Lt. Gomez's testimony "would have affected the outcome of his case." *Grossman*, 447 F.3d at 805.

Here, Lt. Gomez's testimony merely establishes Petitioner was required to participate in a meeting with prison officials about prison conditions. His testimony may provide a plausible inference that the subsequent statements by Petitioner to inmates on the recreation yard were in furtherance of the objectives of that meeting. However, the hearing officer made an equally plausible inference from the evidence presented that Petitioner's statements were intended to encourage a group demonstration. This Court's inquiry into whether Petitioner received due process is limited. The Court may not make credibility determinations or reweigh the evidence. *See Hill*, 472 U.S. at 455-456 ("Ascertaining whether th[e] [some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could

---

[10]Respondent contends that while Petitioner did request Lt. Gomez serve as his staff representative (a request which was denied because Lt. Gomez was directly involved in the matter), he never requested that Lt. Gomez appear as a witness. Respondent is incorrect. Petitioner was represented at the hearing by Staff Representative D. McDaniel. Petitioner has submitted a memorandum from McDaniel stating that Lt. Gomez was called into the hearing to testify on Petitioner's behalf. *See* Petitioner's Memorandum, Exhibit C.

support the conclusion reached by the disciplinary board."). As such, any error by the hearing officer in not referencing Lt. Gomez's testimony in the hearing report is, at best, harmless error. *Compare Grossman*, 447 F.3d at 805 (errors made by prison officials in denying witness testimony at hearings are subject to harmless error review).

Petitioner also premises his due process claim on prison officials' alleged failure to follow their own procedures. *See* Petitioner's Memorandum at 7 (the hearing officer "failed to comply with the rules and regulations of the program statement of the [BOP] by not submitting Lt. Gomez['s] statements on my behalf in the (DHO) report." Assuming, the hearing officer's failure to reference Lt. Gomez's testimony is a violation of BOP policy, such a violation cannot serve as the basis for a due process claim. "[A] failure to adhere to administrative regulations does not equate to a constitutional violation," and thus the relevant inquiry is not whether the proceeding complied with prison regulations. *See Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993).

In sum, Petitioner has failed to establish a violation of his federal due process rights in connection with the challenged prison disciplinary proceeding. He is not, therefore, entitled to federal habeas corpus relief.[11]

---

[11]The Petition sets forth a single ground for relief alleging violations of Petitioner's federal due process rights. In Petitioner's Memorandum, however, he makes a vague and conclusory reference to his "First Amendment Right to Assembly." *See* Petitioner's Memorandum at 3. The Court does not construe the Petition as including a ground for relief premised on the First Amendment. Indeed, the facts as alleged fail to demonstrate a denial of the right to assemble. To the extent the facts arguably could be construed as a claim of retaliation based on Petitioner's exercise of his right to assemble, Petitioner has failed to allege sufficient facts to demonstrate a viable claim. Although incarceration does not deprive an individual of all constitutional rights, it is
(continued...)

# RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied.

# NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections, and a party may respond to another party's objections within 14 days after being served with a copy of the objections. Fed. R. Civ. P. 72(b)(2). Any objections and responses must be filed with the Clerk of the District Court. Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

---

[11](...continued)
well-established that a prisoner's associational rights are "severely and necessarily limited by the realities of confinement." *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 125-26 (1977). "First Amendment associational rights may be curtailed whenever prison officials, exercising informed discretion, reasonably conclude that such associations 'possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objectives of the prison environment.'" *Malik v. Kindt*, No. 95-6057, 1996 WL 41828 at *2 (10th Cir. Feb. 2, 1996) (unpublished op.) (*quoting Jones*, 433 U.S. at 132). The findings of the disciplinary hearing officer demonstrate that prison officials exercised a reasoned response that the Petitioner's association with other inmates in the recreation yard posed a likelihood of disruption to prison order or stability. Under these circumstances, deference must be accorded to the disciplinary response made by prison officials. *See Ramos v. Lamm*, 639 F.2d 559, 579 (10th Cir. 1980) ("[P]rison administrators are to be accorded wide-ranging deference in adopting and executing policies and practices," and, absent substantial evidence in the record indicating they exaggerated their response to considerations of order, discipline, and security, we will ordinarily defer to their judgment.") (quotation omitted).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all matters referred by the District Judge in this case and terminates the referral.

DATED this __2nd__ day of March, 2010.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE